1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

7   UNITED STATES OF AMERICA         )
                                     )      2:05-CR-0121-RCJ-RJJ
8                 Plaintiff,         )
                                     )
9        vs.                         )            **ORDER**
                                     )
10  ROBERT DAVID KAHRE, *et al.*,    )
                                     )
11                Defendants.        )
    _____  )

12

13          This matter comes before the Court on Defendant Robert Kahre's Motion for

14  Reconsideration and Clarification of January 5, 2007, Order Regarding Motion in Limine to

15  Preclude Defense Based Upon Gold and Silver U.S. Coins.  (#695.)  Several Defendants'

16  Motions for Joinder are also before the Court.[1]  The Court has considered the Motion, the

17  pleadings on file, and oral argument on behalf of the parties and hereby issues the following

18  Order.

19                                   **BACKGROUND**

20          Defendants in this case have been charged with several crimes including willful

21  failure to collect or pay over withholding taxes, interfering with the administration of the

22  Internal Revenue Service, and conspiracy to evade or defeat any tax or payment.  Defendants

23  _____

24          [1]Several Defendants have filed Motions for Joinder to Defendant Robert Kahre's Motion:
    Defendants Alexander Loglia (#698); Lori Kahre (#762); Joel Axberg (#778); Heidi Rasmussen
25  (#806); John Kahre (#906); Ron Ruggles (#1022); and Debra Rosenbaum (#1113).

have engaged in a boycott of the federal reserve system.  In accordance with such boycott, Defendants conduct their business dealings with United States Department of Treasury ("Treasury") gold and silver coins.  These coins have a face value far lower than their fair market value.  Defendants regularly purchase these coins from dealers at the listed fair market value price.  Defendant Robert Kahre pays those working in his business with these coins.  Although the coins' fair market value far exceeds their face value, Defendants report income at the face value amount.

Defendant Kahre asks this Court to reconsider/clarify its January 5, 2007, Order.  In that Order, the Court stated the following:

> [B]ecause the law clearly holds that the coins' fair market value was reportable income, they cannot argue that the law did not require them to report the difference between the coins' face and fair market values or that the tax law is somehow unconstitutional.  Accordingly, the Court will not allow Defendants to present any arguments that the law allows them to exclude from income the coins' fair market values or to otherwise argue what the relevant tax law holds.  Defendants may only present a good faith defense that they believed they could report the income as they did for the limited purpose of negating the relevant mens rea requirement, but Defendants cannot argue that their belief was actually correct.

(#237, 2:05-cr-120.)  Defendants ask this Court to reconsider these statements or to clarify the scope of the Order.  Specifically, Defendants argue that the Court must allow them to introduce all "evidence of what they thought the law was and the legal materials which they claim support their beliefs."  (#695 at 2.)  Defendants also filed numerous replies in which they argue that the law does in fact allow them to report income at the coins' face value and not the fair market value.  While their original Motion asked for a clarification or reconsideration, Defendants also argue that Congress has not authorized the Courts or the Treasury to tax these coins at their fair market value.

1

**DISCUSSION**

2

**I.     Defendants Must Report Income at the Coins' Fair Market Value**

3              Courts have consistently held that when the fair market value of legal tender exceeds

4    its face value, such legal tender is property other than money, and thus taxpayers must value

5    that legal tender at its fair market value. *Cordner v. United States*, 671 F.2d 367, 368 (9th

6    Cir. 1982); *Joslin v. United States*, 666 F.2d 1306, 1307 (10th Cir. 1981).  This result is

7    unaffected by the fact that such coins may still be used as legal tender at their face value.

8    *Cordner*, 671 F.2d at 368.  Defendants admit the coins at issue in this case have a fair market

9    value in excess of their face value.

10             Some courts have distinguished between currently circulating legal tender and legal

11   tender not in circulation.  For example, in one Ninth Circuit case the court held that coins

12   which were not currently circulating legal tender were property to be valued at their fair

13   market value for purposes of section 1001(b).  *Cal. Fed. Life Ins. Co. v. Comm'r*, 680 F.2d

14   85, 86-88 (9th Cir. 1982).  Defendants argue the coins at issue are currently circulating, and

15   thus the Court must find that Defendants were required to report the coins' face value as

16   income, not the fair market value.  Both Defendants and the Government proffer different

17   definitions for the term "circulating."  Neither party disputes that coins such as the penny,

18   nickel, dime, or quarter qualify as currently circulating coinage.  However, the Government

19   argues that the gold and silver coins in this case differ from the commonly used penny,

20   nickel, etc., while Defendants basically claim they do not.  As Defendants note, no case has

21   defined "circulating" with regards to the cases distinguishing between circulating and non-

22   circulating coins.  Indeed, the Court could find only one case that has directly examined the

23   coins at issue.  *See Smith v. Comm'r*, 75 T.C.M. (CCH) 2173 (1998).  In *Smith*, the tax court

24   held that taxpayers were required to report the coins at their fair market value.  *Id.* at *10-*11.

25

The facts in this case do not require a different result.  Defendants argue that the tax court erroneously noted that the American Gold Eagle coins were not currently circulating.  However, this argument assumes the correct definition for circulating is Defendants' definition.  Some ambiguity surrounds the correct definition of the term circulating.  For example, Treasury has noted that the gold coins at issue are not currently circulating.

Defendants have not presented sufficient authority or evidence that the Internal Revenue Service may not tax the coins at issue at their fair market value.  While Defendants cite to at least one Ninth Circuit case distinguishing between circulating and non-circulating coins, other Ninth Circuit cases have held—without distinguishing between currently circulating and non-circulating coins—that when legal tender exceeds its face value, such legal tender is property other than money, and thus taxpayers must value that legal tender at its fair market value.  *See, e.g., Cordner*, 671 F.2d at 368.  Accordingly, "[w]hen legal tender, by reason of its value to collectors or the intrinsic worth of its contents, has a fair market value in excess of its face value or tender, then it should be deemed property other than money . . . ."  *Id.*

In *Joslin v. United States*, a case decided when Defendants claim silver dollars were still circulating, the Tenth Circuit stated the following:

> Gross income certainly includes compensation for services.  I.R.C. § 61(a)(1).  If a taxpayer receives property other than cash as compensation, the taxpayer's income is measured by the property's fair market value.  Treas.Reg. § 1.61-2(d)(1),T.D. 7554, 1978-2 C.B. 263.  Unquestionably, a silver dollar has both a face value and a separate value reflecting the coin's numismatic worth.  To this extent a silver dollar combines the characteristics of cash and property.  When a taxpayer bargains for and benefits from the higher market value of silver coins, he or she must include this amount in income.  That silver dollars are designated legal tender with a nominal value of one dollar acceptable at the United States Treasury to discharge one dollar of debt, or exchangeable for a one dollar Federal Reserve note, does not require a different result.  *See* Rev.Rul. 76-249, 1976-2 C.B. 21; *cf. Warren C. Cordner v. United States,* (1980-1) U.S. Tax Cas. (CCH) P 9441 (C.D.Cal.1980) (gold coin dividend

Page 4 of  8

1
2
3
4
5

taxed at numismatic value); *California Fed. Life Ins. Co.* (1976) Tax Ct.Rep.Dec. (P.H.) § 76.8 (U.S. gold coins accepted as payment for Swiss francs are evaluated for tax purposes at their numismatic value); Rev.Rul. 78-360, 1978-2 C.B. 228 (silver coins held by decedent valued for estate tax purposes at their fair market value).  In the instant case the taxpayer in effect has admitted and the IRS has agreed that the silver dollars, at the time of the transaction, had a fair market value of five times their face value.  Under the facts of this case, the taxpayer cannot claim that he intended to benefit or actually benefitted only to the extent of the coins' face value.

6    666 F.2d 1306, 1307 (10th Cir. 1981).  This case is identical.  The coins at issue have a face

7    value and a separate market value representing their numismatic worth.  Defendants have

8    bargained for and benefitted from the higher market value in this instance.[2]  Accordingly,

9    they must include such amount as income.  Congress clearly had this in mind when they

10   passed the Gold Bullion Act, from which the coins at issue were authorized.  Pub. L. No. 99-

11   185, 99 Stat. 1177, codified at 31 U.S.C. § 5112.  When passing that legislation, Congress

12   noted that "[t]he gold coins created by this act are legal tender of the United States—they are

13   monetary instruments, in every sense of that concept, at their fair market value in terms of

14   gold content."  131 Cong. Rec. H10528 (daily ed. Dec. 2, 1985) (statement of Rep. Lewis).

15        Defendants also argue that the Gold Bullion Act overruled the cases cited above.

16   However, as noted, some of these cases were decided well after that Act became law.

17   Defendants also argue that Treasury has usurped congressional authority.  However,

18

19        [2]Indeed, whether the coins are reportable at their face or fair market value may ultimately

20   be irrelevant in this case.  The Government claims in some instances that Defendants attempted to evade taxes by accepting, for example, gold coins for performing services worth the gold

21   coins' fair market value.  The Government alleges that Defendants then exchanged such gold coins for federal reserve notes worth the coins' fair market value.  Although Defendants received

22   cash in the amount of the gold coins' fair market value, they allegedly reported income at the face value, or in some instances, failed to report any income at all.  Regardless of how Defendants

23   characterized their income, if such characterization was motivated by a desire to evade taxes, Defendants can be convicted for attempting to evade taxes.  *See United States v. Jungles*, 903

24   F.2d 468, 474-75 (7th Cir. 1990).

25                                Page 5 of  8

1  Congress has delegated the power to tax to the Internal Revenue Service, and the

2  "'responsibility for construing the [Internal Revenue] Code falls to the IRS.  Since Congress

3  cannot be expected to anticipate every conceivable problem that can arise or to carry out day-

4  to-day oversight, it relies on the administrators and on the courts to implement the legislative

5  will.'"  *Skinner v. Mid-America Pipeline Co.*, 490 U.S. 212, 222 (1989) (quoting *Bob Jones*

6  *Univ.* v. *United States*, 461 U.S. 574, 596-97 (1983)).  Defendants must include as income

7  the coins' fair market value.

8  **II.      Motion for Clarification: What Defendants May Present at Trial**

9          In its prior Order, the Court noted that in *Cheek v. United States*, the Supreme

10  Court held that "[w]illfulness, as construed by our prior decisions in criminal tax

11  cases, requires the Government to prove that the law imposed a duty on the defendant,

12  that the defendant knew of this duty, and that he voluntarily and intentionally violated

13  that duty."  498 U.S. 192, 201 (1991)).  *Cheek* also held that a taxpayer who violates

14  the tax law based on good faith ignorance of the law or an erroneous belief that he

15  was not violating the tax code does not act "willfully," even if the taxpayer's belief is

16  objectively unreasonable:

17          [I]f the Government proves actual knowledge of the pertinent legal duty, the
        prosecution, without more, has satisfied the knowledge component of the
18      willfulness requirement.  But carrying this burden requires negating a defendant's
        claim of ignorance of the law or a claim that because of a misunderstanding of
19      the law, he had a good-faith belief that he was not violating any of the provisions
        of the tax laws.  This is so because one cannot be aware that the law imposes a
20      duty upon him and yet be ignorant of it, misunderstand the law, or believe that
        the duty does not exist.  In the end, the issue is whether, based on all the
21      evidence, the Government has proved that the defendant was aware of the duty at
        issue, which cannot be true if the jury credits a good-faith misunderstanding and
22      belief submission, whether or not the claimed belief or misunderstanding is
        objectively reasonable.
23
24  *Id.* at 202.  This Court then ruled as follows in its prior Order:

25                                          Page 6 of  8

In the present case, Defendants' claims may not be objectively reasonable; nonetheless, pursuant to the above analysis, Defendants may argue that they violated the tax law based on good faith ignorance of the law or an erroneous belief that the law did not require Defendants to include as income the coins' fair market value. However, because the law clearly holds that the coins' fair market value was reportable income, they cannot argue that the law did not require them to report the difference between the coins' face and fair market values or that the tax law is somehow unconstitutional. Accordingly, the Court will not allow Defendants to present any arguments that the law allows them to exclude from income the coins' fair market values or to otherwise argue what the relevant tax law holds. Defendants may only present a good faith defense that they believed they could report the income as they did for the limited purpose of negating the relevant mens rea requirement, but Defendants cannot argue that their belief was actually correct.

In their Motion, Defendants ask the Court to clarify this ruling. Although the Court believes its prior reading is clear, it takes this opportunity to make further comment. At trial, the Court will not allow either Defendants or the Government to argue to the jury what the relevant tax law is, or what it should be, by way of evidence or argument, contrary to any Court instruction on the law. The Court has the responsibility to instruct the jury as to what the relevant law entails. Thus, Defendants cannot argue to the jury that the law does not require them to report the gold coins at their fair market value. In addition, the Court will not allow Defendants to present evidence with the intent to persuade the jury that courts in so holding have illegally usurped congressional authority or otherwise misinterpreted the circulating versus non-circulating issue discussed above. However, although Defendants may not argue a contrary legal theory than that which the Court has decided, Defendants may present a good faith defense that they lacked the mens rea requirement of willfulness. In other words, assuming Defendants establish a proper evidentiary foundation, they may present evidence upon which they relied in establishing the fact they were not aware of their

1    duty under the relevant statutes at issue in this case.

2

3

4                                    **CONCLUSION**

5           Pursuant to the above analysis, the Court grants in part and denies in part Defendants'

6    Motion.  The Court denies Defendants' request to reconsider the relevant tax law at issue in

7    this Order.  However, the Court grants Defendants' request to clarify what they may or may

8    not present at trial to establish their good faith defense. Accordingly, IT IS HEREBY

9    ORDERED that Defendants' Motion is *granted* in part and *denied* in part.  IT IS FURTHER

10   ORDERED that all Defendants' Motions for Joinder are *granted*.

11

12          DATED: May 22, 2007.

13

14          _____
                    ROBERT C. JONES
15           UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25                              Page 8 of  8