IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| United States, | ) | Case No. 2:05-cr-121 DAE (RJJ) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Robert D. Kahre, Alexander Loglia, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT ALEXANDER LOGLIA'S MOTION FOR
RECUSAL OF MAGISTRATE JUDGE ROBERT J. JOHNSTON

On December 5, 2008, the Court heard Defendant Alexander Loglia's

Motion For Recusal of Magistrate Judge Robert J. Johnston.  J. Gregory Damm,

Assistant U.S. Attorney, appeared at the hearing on behalf of the Government; Lisa

A. Rasmussen, Esq., appeared at the hearing on behalf of Defendant Robert Kahre;

William A. Cohan, Esq., appeared at the hearing via telephone on behalf of

Defendant Robert Kahre; Joel F. Hansen, Esq., appeared at the hearing on behalf of

Defendant Alexander Loglia; Donald MacPherson, Esq., appeared at the hearing

via telephone on behalf of Defendant Danielle Cline; and Michael J. Kennedy,

Assistant Federal Public Defender, appeared at the hearing on behalf of Defendant

Lori Kahre. After reviewing the motion and the supporting and opposing memoranda, the Court DENIES Defendant's Motion and related joinders.

<u>BACKGROUND</u>

The parties are well aware of the factual background of this case and so this Court will only recite those facts relevant to the instant motion. The Defendants are charged with various conspiracies and attempts to evade taxes. Magistrate Judge Robert J. Johnston (the "Magistrate Judge" or "Judge Johnston") has been assigned to the criminal case since its inception in April 2005.[1]  On May 2, 2006, Defendant Loglia filed a Motion for Evidentiary Hearing and Notice of Possible Source of Judicial Bias and Prejudice (Doc. # 445), and on May 5, 2006, Defendant Kahre filed a similar Motion for Recusal of Magistrate Judge Robert J. Johnston (Doc. # 454) (together, the "First Motion").  Judge Johnston set a hearing on the First Motion for May 16, 2006.

In the First Motion and at the related evidentiary hearing, Defendants argued that judicial bias and prejudice were shown because of the Magistrate Judge's association with a potential government witness, Don Herman.  Mr.

---

[1]The parties are also involved in the following related civil cases in the U.S. District Court, District of Nevada: (1) Allen, et al. v. Damm, et al., Case No. 2:03-cv-01358 DAE (RJJ); and (2) Kahre v. Damm, et al., Case No. 2:07-cv-00231 DAE (RJJ).  Magistrate Judge Johnston currently sits on these related cases as well as the criminal case pending in the instant motion.

Herman was a friend of Defendant Robert Kahre's for over twenty seven years and had been interviewed by IRS investigators on several occasions regarding business interactions with Kahre.  Mr. Herman was also interviewed regarding firearm transactions with Kahre that were significant in the execution of search warrants in the case.  (Transcript of Evidentiary Hearing, Doc. # 2069, Ex. B. at 213.)  On March 20, 2006, the government produced an updated discovery index that named Mr. Herman as a witness, with the designation of "NTP," or "need to produce." (Doc. # 325-5.)  The government admitted Mr. Herman would be classified as a potential government witness but did not know what testimony, if any, Mr. Herman would be asked to provide.  (Doc. # 2069, Ex. B. at 212.)

Mr. Herman is a member of the Church of Jesus Christ of Latter Day Saints ("LDS Church").  Judge Johnston is also a member and a counselor to the State Presidency, a position of leadership within the LDS Church.  According to Mr. Herman's testimony at the evidentiary hearing on the First Motion, Judge Johnston's duties as part of the State Presidency include presiding over LDS Church bishops and wards and signing off on temple recommends.  (Doc. # 2069, Ex. B. at 53.)

According to the Defendants, Mr. Herman and Judge Johnston engaged in several extrajudicial conversations in which they discussed the

3

Defendants and their pending criminal cases.  The first alleged instance occurred when Mr. Herman and his then-wife, Laurie Webb, attended one of Defendant Kahre's arraignment hearings.  During a recess to the arraignment, Mr. Herman and Ms. Webb met with Judge Johnston in his chambers.  Defendant Kahre alleges that during this meeting, the Magistrate Judge made several comments to Mr. Herman about Kahre and Kahre's attorneys.  At the evidentiary hearing, Mr. Herman recalled the meeting in Judge Johnston's chambers.  He also testified that Judge Johnston asked him if he knew Robert Kahre but did not recall any other comments about Kahre or the case.

The second alleged instance of inappropriate contact between Mr. Herman and Judge Johnston occurred on March 9, 2006.  On that date, Mr. Herman met with Judge Johnston in his capacity as spiritual counselor in the LDS Church to discuss Mr. Herman's pending divorce from his wife.  Defendant Kahre claims that during this counseling session, the Magistrate Judge discussed Kahre and the various cases to which is a party.  Specifically, Kahre claims Judge Johnston asked about what kind of a person Kahre was and whether the claims regarding an IRS raid were true.  Further, Kahre claims Mr. Herman told him that the Magistrate Judge opined on the likelihood of dismissal of Kahre's criminal case.  At the evidentiary hearing, Mr. Herman confirmed that he had visited Judge

Johnston for spiritual counseling regarding his divorce and that he had spoken with Judge Johnston on numerous occasions at the LDS Church. (Doc. # 2069, Ex. B. at 56-58.)  He denied, however, that the Magistrate Judge asked questions or made comments about Kahre or his criminal case.  (Doc. # 2069, Ex. B. at 45-47.)

On April 30, 2007, Judge Johnston issued an order denying the First Motion.[2]  (Doc. # 1209.)  The Magistrate Judge held that any suggestion of bias or prejudice was illusory and there was no basis to doubt his impartiality. Accordingly, Judge Johnston remained the magistrate judge assigned to the Defendants' criminal and civil cases.

The United States prosecuted the criminal case, which began in May 2007 against Robert Kahre and eight other defendants.  On September 17, 2007, a jury returned no verdict as to any counts against defendants Robert Kahre, Lori Kahre, and Alexander Loglia, and no verdict as to all but one count against Dannielle R. Alires.  (Doc. # 1626.)  On November 20, 2007, the United States filed a Third Superseding Criminal Indictment in the case, charging Robert Kahre and others with 79 criminal counts.  (Doc. # 1671.)  As a result, many issues raised in the first prosecution are being raised again.

---

[2]There is no indication from the record why nearly one year passed between filing of supplement post-hearing briefs in early June 2006 and Judge Johnston's order in late April 2007.

On November 17, 2008, Defendant Loglia filed the instant Motion for Recusal of Magistrate Judge Robert J. Johnston.  (Doc. # 2069.)  Defendants Robert Kahre and Lori Kahre joined.  (Docs. ## 2070, 2088, respectively.)  On December 5, 2008, the government responded. (Doc. # 2104.)

## STANDARD OF REVIEW

The decision to grant or deny a motion for recusal is within the court's discretion.  See United States v. Wilkerson, 208 F.3d 794, 797 (9th Cir. 2000).

## DISCUSSION

In the absence of a legitimate reason to recuse himself, a judge should participate in cases assigned.  See United States v. Holland, 519 F.3d 909, 912 (9th Cir. 2008).  A judge may not sit, however, in cases in which his impartiality might reasonably be questioned.  Id.

Defendants base their motion for recusal on 28 U.S.C. §§ 455(a) and (b).  Section 455(a) states in relevant part: "any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned."  28 U.S.C. § 455(a).  The goal of section 455(a) is to avoid even the appearance of partiality and promote public confidence in the integrity of the judicial process.  See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988).

6

Section 455(b), on the other hand, lists specific circumstances under which a judge's impartiality is presumed to be impaired and recusal is mandatory. Section 455(b) provides that a federal judge must recuse if the judge: (1) has a personal bias or prejudice concerning a party, or has personal knowledge of disputed evidentiary facts concerning the proceeding; and/or (2) is likely to be a material witness to the proceeding.  28 U.S.C. §§ 455(b)(1) and (5)(iv).

The Ninth Circuit has established that the standard for determining disqualification based on the appearance of bias is the same in both sections 455(a) and 455(b), even if the reach of the two sections is not necessarily coextensive. See United States v. Conforte, 624 F.2d 869, 880 (9th Cir. 1980).  The test is an objective one, wherein the judge is required to recuse himself "only when a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  Clemens v. U.S. Dist. Ct., 428 F.3d 1175, 1178 (9th Cir. 2005).  In other words, section 455 asks whether a "reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits."  Id. (quoting In re Mason, 916 F.2d 384, 385 (7th Cir. 1990)).  The "reasonable person" in this context means a "well-informed, thoughtful observer," as opposed to a "hypersensitive or unduly suspicious person."  Id.

7

Claims for recusal must be evaluated on an objective basis, so that "what matters is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548 (1994); see also Conforte, 624 F.2d at 881 ("the appearance of partiality is as dangerous as the fact of it"). However, there must be "a reasonable factual basis for doubting the judge's impartiality." United States v. Rogers, 119 F.3d 1377, 1382 (9th Cir. 1997) (quoting Conforte, 624 F.2d at 881) (emphasis added).

The Ninth Circuit also applies the general rule that questions about a judge's impartiality must stem from "extrajudicial" factors, Liteky, 510 U.S. at 554, that is, from sources other than the judicial proceeding at hand. See Pau v. Yosemite Park & Curry Co., 928 F.2d 880, 885 (9th Cir. 1991) (citing Toth v. Trans World Airlines, 862 F.2d 1381, 1388 (9th Cir. 1988)).

Furthermore, because section 455 claims are fact-driven, the analysis of a particular section 455 claim is guided, not by "comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." Clemens, 428 F.3d at 1178 (quoting United States v. Bremers, 195 F.3d 221, 226 (5th Cir. 1999)).

As a threshold matter, there is a serious question as to whether Defendants' motion is timely.  The Ninth Circuit requires recusal motions to be filed in a timely fashion.  See Preston v. United States, 923 F.2d 731, 733 (9th Cir. 1991); see also Davies v. Commissioner, 68 F.3d 1129, 1131 (9th Cir. 1995). "While no per se rule exists regarding the time frame in which recusal motions should be filed after a case is assigned to a particular judge, if the timeliness requirement is to be equitably applied, recusal motions should be filed with reasonable promptness after the ground for such a motion is ascertained."  Preston, 923 F.2d at 733.

In this case, Defendants originally filed their First Motion shortly after learning that Mr. Herman was listed as a potential government witness and that he had several personal interactions with the Magistrate Judge.  Such filing was certainly timely.  However, Defendants failed to further object to the Magistrate Judge's assignment in the case after he issued the order denying the First Motion on April 30, 2007.  Defendants' case went to trial with Judge Johnston still assigned and, after the jury trial concluded, Defendants filed various unrelated appeals to the Ninth Circuit.  During this time, Defendants failed to object to the Magistrate Judge's assignment and chose not to appeal Judge Johnston's order to the Ninth Circuit along with their other appeals.  Moreover, when the Defendants

were re-indicted in November 2007, Defendants were certainly aware that the Magistrate Judge was again assigned to their case.  Since November 2007, Judge Johnston has issued orders and Defendants have failed to object until now.[3]  (See Docs. ## 1998, 2000.)

　　　　　As a result, the instant motion was filed nearly eighteen months after Judge Johnston's original order denying the First Motion and approximately a year after Judge Johnston was again assigned to the criminal case resulting from the third superceding indictment.  Moreover, this motion was filed nearly two and a half years after the alleged ex parte conversations that form the basis for the recusal claim occurred.[4]

　　　　　The policy underlying the timeliness requirement speaks to the situation in this case.  As the Ninth Circuit has observed, absent a timeliness requirement, parties would be encouraged to "withhold recusal motions, pending a resolution of their dispute on the merits, and then if necessary invoke section 455

_____

[3]The trial judge issued most orders in the wake of the jury verdict and third superceding indictment.  However, Judge Johnston remained the magistrate judge assigned to the case and has recently issued orders in preparation for the upcoming trial.

[4]Defendants are not at fault for Judge Johnston waiting nearly a full year before issuing his order denying the First Motion.  However, it is undeniable that Defendants have been aware of the circumstances underlying the recusal claim for a significant period of time.

in order to get a second bite at the apple."   <u>Rogers</u>, 119 F.3d at 1380.  The absence

of such a requirement would also result in increased instances of wasted judicial

time and resources.  <u>See</u> <u>Preston</u>, 923 F.2d at 733 (citations omitted).  Based on

these policy concerns, the Ninth Circuit has found several recusal motions

untimely.  <u>See, e.g.</u>, <u>Rogers</u>, 119 F.3d at 1382 (failure to make motion until more

than one and one-half years after he was aware of the grounds for disqualification –

and almost nine months after his resentencing – renders his motion untimely); <u>E. &</u>

<u>J. Gallo Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280, 1295 (9th Cir. 1992) (holding

disqualification motion untimely when filed eight months after party knew grounds

for disqualification and after adverse ruling).

      For these reasons, this Court has concerns that Defendants have

inexcusably delayed bringing the instant motion to disqualify, making the motion

untimely.

      Even assuming that Defendants' recusal motion is timely, however,

the circumstances do not require recusal.  First, Defendants rely heavily on the

claim that Judge Johnston should not have conducted the evidentiary hearing on

the First Motion.[5]  However, a recusal motion under section 455 must be initially

---

[5]Defendant Lori Kahre's Joinder to Defendant's motion claims that <u>United</u>
<u>States v. Azhocar</u>, 581 F.2d 735 (9th Cir. 1978), dictates that Judge Johnston's

       (continued...)

decided by the judge whose impartiality is being questioned.  See In re Bernard, 31

F.3d 842, 843 (9th Cir. 1994) (Kozinski, J.); United States v. Silba, 624 F.2d 864,

868 (9th Cir. 1980); United States v. Balistrieri, 779 F.2d 1191, 1202-03 (7th Cir.

1985) ("Section 455 clearly contemplates that decisions with respect to

disqualification should be made by the judge sitting in the case, and not by another

judge.").  Therefore, Defendants' claim regarding Judge Johnston's ability to

conduct the hearing are unavailing.

Second, Defendant Kahre's assertions about the ex parte nature of

Judge Johnston and Mr. Herman's conversations are based on hearsay statements

that were almost entirely denied by Mr. Herman in his sworn testimony.

Specifically, Mr. Herman denied: (1) having a conversation with Judge Johnston

concerning an IRS raid on Kahre's property (Doc. # 2069, Ex. B. at 45); (2) that

Judge Johnston opined on Kahre's likelihood of success in his criminal case (Doc.

------

[5](...continued)
decision to hold the evidentiary hearing was in error.  The statute at issue in
Azhocar, however, was 28 U.S.C. § 144, which requires a party to file a sufficient
affidavit alleging that the judge before whom the matter is pending has a personal
bias or prejudice.  Id. at 738, n.3.  Under section 144, after the judge has
determined the affidavit is sufficient, the judge "shall proceed no further therein,
but another judge shall be assigned to hear such proceeding."  28 U.S.C. § 144.
Defendants did not bring their motion under section 144.  Section 455, under
which Defendants based the instant motion, has no such affidavit requirement and,
thus, has no bearing on whether a judge may hear a section 455 motion himself.

# 2069, Ex. B. at 45); (3) having revealed to the Magistrate Judge that he had been

questioned about guns or interviewed by investigators (Doc. # 2069, Ex. B. at 44,

41); and (4) that Judge Johnston made comments about being upset or angry with

Kahre's attorney (Doc. # 2069, Ex. B. at 38).  Kahre's hearsay assertions are, thus,

without factual basis and, in some instances, have been specifically repudiated by

the witness.  Thus, they do not rise to a level requiring recusal.

       Without the specific inappropriate comments, Defendants' claims of

bias rest entirely on the assertion of a personal and spiritual relationship between

Judge Johnston and Mr. Herman.[6]  It is clear that Judge Johnston and Mr. Herman

are familiar with each other through their membership in the LDS Church.  As

Defendants correctly point out, however, membership in a church should not in

itself create sufficient appearance of bias to require recusal.  See In re McCarthey,

368 F.3d 1266, 1270 (10th Cir. 2004);  Bryce v. Episcopal Church, 289 F.3d 648,

660 (10th Cir. 2002).  Moreover, rarely does a judge's mere acquaintance with a

---

[6]Defendants assert that several actions taken by Judge Johnston during the evidentiary hearing were improper, including the decision to exclude Defendant Robert Kahre from the proceeding, requiring Kahre to be advised of penalties for perjury, and releasing notes written by Kahre that may have implicated the attorney-client privilege.  However, such objections are more properly lodged in an appeal of Judge Johnston's April 30, 2007 order.  A judge's conduct during the proceedings should not, except in the "rarest of circumstances" form the basis for recusal under section 455(a). Liteky, 510 U.S. at 555.

party or witness justify recusal.  See Conforte, 457 F.Supp. 641, 658-59 (recusal not required in criminal case in which defendant had dozens of social encounters with judge at bridge tournaments and held a negative opinion of him).

The spiritual relationship between Judge Johnston and Mr. Herman is, however, more extensive than coincidental membership in the same church.  Mr. Herman testified that he engaged in counseling sessions with Judge Johnston relating to his divorce and would characterize himself as in Judge Johnston's "care."  Furthermore, Judge Johnston's position as counselor to the State President provides him with a certain amount of authority within the church and, consequently, over Mr. Herman.  Judge Johnston, in fact, signed Mr. Herman's "temple recommend card," which enabled him to participate in the LDS Church, an activity which Mr. Herman admits is of significant importance to him spiritually and emotionally.  Such facts are certainly of note with respect to Judge 62Johnston's impartiality in relation to Mr. Herman.

Mr. Herman also testified, however, that he had conversations with the Magistrate Judge "less than five times" in the last three to four years. Furthermore, many of these conversations occurred casually, on the walkway to the LDS Church.  Mr. Herman admitted he is not social friends with Judge Johnston but rather knows him through "official church business."

14

Although Judge Johnston's relationship with Mr. Herman warrants discussion in the context of this motion, the totality of the circumstances indicates that the relationship is not sufficient to justify recusal in this case.  A judge is not a "sterile creature[ ] who don[s] judicial robes without any prior contacts in the community but rather [is] very likely to be [a] m[a]n [or] wom[a]n with a broad exposure to all kinds of citizens of all shades of persuasion and background." United States v. Mosesian, Nos. 91-10188, 91-10197, 1992 WL 197408, at *5 (9th Cir. Aug. 18, 1992) (quoting In re Searches Conducted on March 5, 1980, 497 F. Supp. 1283, 1290 (E.D. Wis. 1980)) (brackets in original).[7]  Judge Johnston's interactions with Mr. Herman at the LDS Church do not, in and of themselves, indicate prejudice or bias that would necessitate recusal.

Finally, Defendants cannot connect Judge Johnston's relationship with Mr. Herman to any possible harm or prejudice to the Defendants.  Mr. Herman appears to be a tangential witness at best, one who the government says it does not know how it may use, if at all.  Mr. Herman was interviewed by IRS investigators in relation to Defendant Robert Kahre.  However, there is no indication that Mr. Herman will be called as a material witness in either the government's or

---

[7]  The Court notes that this is an unpublished opinion and is not binding authority.  See 9th Cir. R. 36-3.  However, the Court finds this policy statement persuasive.

Defendants' case and the Defendants point to no specific counts in the indictment where Mr. Herman's testimony would be material.  As such, even assuming *arguendo* that Judge Johnston would evince some prejudice or bias against the Defendants as a result of his relationship with Mr. Herman, there is no indication Judge Johnston would have an opportunity to do so.  There simply is no evidence Mr. Herman would have any impact on the case or Judge Johnston's impartiality.

Were Mr. Herman a defendant, interested party, or even a material witness, this Court would consider the possibility of impartiality more acute. However, because there is no indication that Mr. Herman will impact the criminal case and because Judge Johnston is not allowed to make credibility determinations in his capacity as magistrate judge, this Court finds there is not enough factual basis to support recusal.

Furthermore, as a magistrate judge in a felony criminal matter, Judge Johnston does not issue orders on any dispositive motions nor does he sit before a jury.  Any decision he makes on non-dispositive motions can be appealed to this Court.  See Fed. R. Civ. P. 72(a); LR IB 3-1 ("[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a . . . criminal case . . . where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law.").  A magistrate judge's factual findings are reviewed under the "clearly

16

erroneous standard" while the "contrary to law" standard applies to the magistrate judge's legal conclusions.  Grimes v. City and County of San Francisco, 951 F.2d 236, 240 (9th Cir. 1991).  Under the contrary to law standard, this Court would conduct a *de novo* review of the magistrate judge's legal conclusions.  Id. at 241. Any potential prejudice to Defendants, therefore, would be limited on two levels: (1) this Court would retain the authority to review any of Judge Johnston's decisions that Defendants find objectionable; and (2) there would be no occasion for the criminal jury to see or infer bias in favor of Mr. Herman as Judge Johnston will not be the trial judge in this proceeding.

Accordingly, Defendant's Motion for Recusal of Judge Johnston and related joinder motions are DENIED.

CONCLUSION

For the reasons stated above, the Court DENIES Defendants' Motion for Recusal of Magistrate Judge Robert J. Johnston and related joinders.

IT IS SO ORDERED.
DATED:  Honolulu, Hawaii, December 15, 2008.

DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE

United States v. Kahre, et al., Case No. 2:05-cr-121 DAE (RJJ); Order Denying Defendant Alexander Loglia's Motion for Recusal of Magistrate Judge Robert J. Johnston

17